WILLIAM E. BARKLEY, JR., ADMINISTRATOR, ET AL., APPELLEES, v. CITY OF LINCOLN ET AL., APPELLANTS.

FILED JULY 17, 1908.   No. 15,111.

1. Cities: VOID ASSESSMENTS: REASSESSMENT. Section 7792, Ann. St. 1903, providing for the reassessment of property by the city council in all cases where special assessments have or may be declared void or invalid, does not authorize a reassessment of property for the benefit of a purchaser at tax sale, who fails to recover the amount of such special taxes from the property on account of the illegality of the assessment.

2. ———: ———: INJUNCTION. An injunction will lie to restrain the city council from proceeding under color of right to reassess special taxes and relevy the same upon property when they have no authority to do so.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*E. C. Strode, T. J. Doyle* and *D. J. Flaherty,* for appellants.

*E. F. Pettis, contra.*

EPPERSON, C.

In 1892 a special assessment was levied against lots 7, 8 and 9, in block 21, of Lavender's addition to the city of

Lincoln, then owned by Helena Knight, to defray the expenses of paving the streets upon which they abutted. The special assessment was payable one-tenth annually. Default was made in the payment of all taxes levied upon said lots in 1899, including the fifth payment of the said special taxes. One Lessenhop, or his grantor, purchased the premises at tax sale in November, 1900, and paid the subsequent general and special taxes; and later instituted proceedings in the district court to foreclose the same. The court awarded him a foreclosure of the general taxes, but adjudged the special tax void because of irregularities in the assessment and levy thereof. Thereafter the city council took initiative steps toward the reassessment of said property under the provisions of section 7792, Ann. St. 1903, which provides in part: "The council shall have power in all cases where special assessments heretofore made or which may hereafter be made, for any purpose, have or may be declared void or invalid, for want of jurisdiction, in making or levying such special assessments or on account of any defect or irregularity in the manner of levying the same, or for any cause whatever, to reassess and relevy a new assessment equal to the special benefits or not to exceed the cost of the improvement for which the assessment was made upon the property originally assessed, and such assessment so made shall constitute a lien upon the property prior and superior to all other liens except liens for taxes or other special assessments." After having given notice of their intended proceeding, the plaintiffs herein instituted this action to restrain defendants from reassessing and relevying taxes for such improvement. Upon trial in the district court, the temporary order of injunction previously issued was made perpetual, and the defendants enjoined from reassessing or relevying the special pavement taxes, and defendants appealed. At the time the taxes were paid by the purchaser, the proceeds thereof were distributed and the amount levied by the city was delivered to it, and was used for the purpose of paying

bonds issued by the city to raise funds to pay for the improvement in controversy.

Defendants contend that, upon the failure of the purchaser to recover upon his tax sale certificate because of illegality of the taxes, he is subrogated to all the rights of the city, including the right to reassess the property, and that it is the duty of the city council to proceed to relevy the special taxes for his benefit. We are cited to no case which is directly in point, but it is contended that *Grant r. Bartholomew,* 57 Neb. 673, lays down a rule broad enough to support the defendants' contention in this case. It is there said, in reference to a void sale for taxes, that the sale will be held "effective as an assignment and transfer of the liens of the public to the tax purchaser, and invests him with all liens and rights which the public had against said real estate by reason of the taxes assessed and delinquent thereon," and "the uniform holding has been that, if the sale was void, no matter for what reason, it was still effective as an assignment of the public's interest." *Grant v. Bartholomew* did not determine the right of a city to reassess property liable to taxation for improvements, nor did the language quoted refer to irregular or illegal taxes, but had reference to an irregular sale for legal taxes, and must be taken to refer only to the lien which the law imposes upon property for and by reason of taxes regularly assessed and levied. That the language quoted did not intend in any way to refer to taxes illegally levied may be seen by referring to the opinion on rehearing (58 Neb. 839), wherein it appears that the purchaser in that case was denied a lien for the amount paid as special taxes which were irregularly levied. It was for the general taxes only which were regularly levied that the decision of the court relied upon by the appellants herein applied. It is a well-established rule in this state that, in the absence of a statute, the purchaser at a tax sale cannot upon the failure of his lien recover the amount he expended for taxes from the city levying the same. *Pennock v. Douglas County,* 39.

Neb. 293; *Merrill v. City of Omaha,* 39 Neb. 304; *Norris v. Burt County,* 56 Neb. 295; *Adams v. Osgood,* 42 Neb. 450; *McCague v. City of Omaha,* 58 Neb. 37; *Martin v. Kearney County,* 62 Neb. 538. It would seem, therefore, that no occasion would exist for a reassessment and relevy of the property, inasmuch as the taxes have been paid by the purchaser. The city not being required by law to refund the same, it would necessarily follow that it could not voluntarily reimburse him. It is a rule, requiring the citation of no authorities to support it, that a municipal corporation can levy taxes only for the purposes authorized by statute. There is not now, and never has been, in this state a statute making a city liable to the purchaser at tax sale for the repayment to him of the amount he expended in the payment of taxes upon his failure to collect the same from the property. Defendants argue, notwithstanding the rule so firmly established by the cases cited above, that the reassessment and relevy may be made by the city council for the benefit of the purchaser on account of his right to subrogation. The doctrine of subrogation can hardly be carried to this length. It contemplates the existence of a lien to which some other person succeeds by reason of having procured an interest in the property. The lien must be an existing one, which the holder thereof could have enforced at the time of the transfer of interests. At no time has the city of Lincoln had a lien upon the property here in controversy. From the time of the attempted levy of the special taxes until such levy was declared void by the district court, the city of Lincoln and the holder of the tax sale certificate had but an apparent lien. Had the sale only been illegal, that is to say, had there been an illegal or insufficient sale of the premises by the county treasurer for the satisfaction of taxes legally levied, there might be some reason to extend to the purchaser the right of subrogation to the lien of the city for such taxes. We do not know of any case, and are cited to none, which gives to the purchaser the right to have the city create a lien to be substituted

for the one which he supposed that he was acquiring at the time of the purchase. In *Merriam v. Hemple,* 17 Neb. 345, the right to subrogation by the purchaser at a void sale of real estate for taxes is expressly limited to the legal taxes so paid by him, with legal interest. The facts relative to the taxation of property in *John v. Connell,* 61 Neb. 267, are very similar to the case at bar. That was an action to foreclose a tax sale certificate. A part of the taxes in controversy was a special assessment made to defray the expenses of grading an avenue abutting the lots in controversy. Regular taxes and other special taxes had also been paid by the purchaser. The court found that the special taxes for grading were absolutely null and void, but held that the purchaser was subrogated to the lien of the public only to the extent of the taxes legally levied. The court held: "A tax sale certificate based upon a void levy or assessment gives to the person to whom it is issued no lien upon the property described therein."

It is true that section 7792, *supra,* provides that the council shall have power in all cases where special assessments have or may be declared void or invalid for want of jurisdiction in the first instance to assess, etc., but this must be read with reference to the object of the statute; and proceedings thereunder may be had only for the purpose of exercising such authority as is within legitimate scope of the act. It is apparent that the section was intended to provide public revenue, and for this purpose only can proceedings be had thereunder. Such was not the purpose of the defendants herein in their contemplated proceedings which were restrained by the order of the lower court; instead, they were seeking to raise funds for the benefit of an individual who, as above shown, has no claim upon the city. It is perhaps unfortunate that the purchaser cannot recover from a city the amount of the municipal tax he has paid whenever his tax certificate is declared void because of irregularity in the assessment; but we take the law as we find it, and not as we would have it. Could the purchaser recover from the city, there

would be little or no doubt but that the authorities could relevy the taxes. But to hold that the city could refund the purchase price would be to overrule a line of decisions above cited, and, moreover, to create an exception to the well-established and wise rule limiting municipalities to the exercise of such powers as are conferred by statute. To permit a relevy in the case at bar would be to create a fund, which, under the law, could not be repaid to the purchaser. The improvements have been paid for, and the levy under these circumstances would be for personal and not public interests. The purchaser paid the amount of the tax voluntarily. The city did not guarantee the legality of the tax. It is true that he received nothing of value. But he had an opportunity to inquire and ascertain what he was buying before he parted with his money. At that time the statute did not provide for the reassessment of the property. He had no right to expect that in the event the levy was avoided the city would relevy the taxes for his benefit.

In *Budge v. City of Grand Forks,* 1 N. Dak. 309, in a case wherein both the facts and the statute authorizing reassessments were similar to the case at bar, it was held: "That a subsequent statute, authorizing municipalities to reassess, * * * was intended for the benefit of the taxing municipalities only, and that, where such municipality had received the amount of the former assessment by the sale of the assessed property, the right of such municipality to assess such property for such improvement was extinguished, and could not be reasserted, and no power of reassessment as to such property was given by the statute." This case was criticised in *Schintgen v. City of La Crosse,* 117 Wis. 158. The two cases can well be distinguished, for both the facts and the laws construed were different; and the Wisconsin case may for the same reasons be distinguished from the case at bar. The assessment there involved was made, but the taxes were not paid. The city authorities then issued improvement bonds therefor. "The improvement bond is practi-

cally but another form of a special assessment certificate which gives the property owner an opportunity to pay his assessment in instalments running through a period of years, instead of paying the whole amount of the assessment at once." The reassessment statute construed expressly provided for the issuance of new improvement bonds in the place of those previously issued. Thus we see that by the statute authorizing reassessment the payment of improvement bonds was provided for by the legislature. From a consideration of the above case, it is apparent that the person for whose benefit the reassessment was made advanced the money upon the improvement bond, and that his money was used for the construction of the improvement. The reassessment statute was enacted in part to save him harmless in the event that the assessment should be declared illegal. In the case at bar, the purchaser at the tax sale did not pay his money for the purpose of constructing the improvement for which the special assessment was made. His venture was a speculation, and not for the purpose of assisting the city officials in the improvement of the streets. And, again, as to the Wisconsin case, the right to reassessment existed when the improvement bonds were issued, and under the statute the holder of such bonds was given all the right, title and interest of such city in and to the assessment on which it is based, including, it appears from the opinion, the right to reassessment. It has been held in this state that, although a tax sale is void, yet it will be effective as an assignment and a transfer of the rights of the public to the purchaser and subrogate him to all the liens against the real estate which the public had by reason of the taxes levied. *Grant v. Bartholomew,* 57 Neb. 676. The purchase was made in November, 1890, at which time the city of Lincoln had no authority to reassess property. The statute above quoted was enacted in 1901. This statute was not intended for the benefit of the purchasers at tax sales, and did not give to the purchaser any greater rights than he had prior thereto. The

statute may be retroactive in so far as it affects the right of the municipality to raise revenue which otherwise would be lost to it and for whose benefit it was enacted, but it cannot be construed as extending to the purchaser any rights whatever.

It is suggested by the defendants that an injunction suit will not lie. It appears that the notice served by them upon the plaintiffs gave notice that they would meet at a certain time for the purpose of reassessing taxes against the property in controversy to pay for the improvement, requiring the plaintiffs to appear at the time named and show cause why said property should not be so assessed. The defendants, contending at all times since the institution of this suit that they have the legal right to reassess the property, are hardly in a position to urge that the object of their meeting was for the purpose of considering only whether or not the property should be reassessed. It is apparent that an attempted reassessment would cast a cloud upon the plaintiff's title, and interfere with and delay a sale of said property, a license for which had been granted to one of the plaintiffs as administrator. We think there is no doubt but that injunction is a proper remedy in this case to prevent the defendants, the city council, from proceeding under color of right to do a thing which is not authorized by law, and which will be, as above shown, a great injury to the plaintiffs.

We recommend that the judgment of the district court be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.