SILAS W. LEAVITT and Others v. CITY OF MORRIS.[1]

July 24, 1908.

Nos. 15,774—(241).

**Act Constitutional.**

>　　Chapter 288, Laws 1907, entitled "An act creating and establishing a hospital farm for inebriates, and authorizing the state board of control to purchase lands therefor, and to provide means for the building and maintenance of such institution," is constitutional.

Action in the district court for Stevens county by the members of the State Board of Control of Minnesota to recover $60, being two per cent. of the amount derived by the defendant city from the issuance and sale of liquor licenses between April 22, 1907, and January 1, 1908. From an order, Flaherty, J., overruling defendant's demurrer to the complaint, it appealed. Affirmed.

*James B. Ormond,* City Attorney of Morris, and *Henry T. Ronning,* Village Attorney of Glenwood, for appellant.

*Edward T. Young,* Attorney General, and *Geo. W. Peterson,* Assistant Attorney General, for respondents.

[1] Reported in 117 N. W. 393.

START, C. J.

Action by the state board of control, commenced in the district court of the county of Stevens, to recover from the city of Morris two per cent. of the money received by it on account of licenses issued for the sale of intoxicating liquors. The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, and appealed from an order overruling the demurrer. The action is based upon chapter 288, p. 387, Laws 1907, which the defendant contends is unconstitutional. If it be so, the order overruling the demurrer is erroneous; otherwise, it is correct.

1. The first contention of the defendant is that the act is unconstitutional for the reason that a tax is attempted to be levied upon non-taxable property. The act is entitled "An act creating and establishing a hospital farm for inebriates, and authorizing the state board of control to purchase lands therefor, and to provide means for the building and maintenance of such institution." This act, after authorizing the purchase of a tract of land and the erection of suitable buildings thereon to be used as a hospital farm for inebriates, then provides the means for the erection and maintenance of such hospital. This is done by section 19 of the act, which is to the effect following:

For the building and maintenance of such hospital a tax of two per cent. is hereby levied upon all license fees for the sale of intoxicating liquors under the laws of this state, and, whenever a license is granted by any municipality for the sale of intoxicating liquors, two per cent. of the amount charged for such license shall be set aside by such municipality for the payment of the tax herein specified and shall be immediately remitted to the state treasurer, who shall credit the same to a fund known as the "Inebriate Fund." The cost and expenses of the maintenance of the hospital shall be paid from such fund, if sufficient, and any deficit shall be paid from the appropriations made by the legislature.

Section 20 reads as follows: "If any city, village, county or other municipality shall fail or neglect to comply with the provisions of the last section, the board of control is hereby authorized to recover said taxes in a civil action, brought in the name of said board against such city, village, county or other municipality making default in the payment of said tax."

It is urged that the provisions of section 19 violate section 3, article 9, of our state constitution, which provides that "public property used exclusively for any public purpose * * * shall * * * be exempt from taxation," in that license fees, when paid, are public property, and that section 19 levies a tax on such public property. It is obvious that, if the act in question levies a tax on money belonging to a municipality held by it for a public purpose, it is a violation of the provision of the constitution quoted. The question, then, is whether the act does levy a tax on the money of the municipalities of the state.

It is true that prior to the passage of the act in question all money received by a municipality as fees for liquor licenses belonged to the municipality issuing the license; but this right was conferred by the legislature, which has the power to take away the right in whole or in part as to license fees in the future. The whole subject of the licensing of the sale of intoxicating liquors is within the control of the legislature, which may, in its discretion, forbid the sale of such liquors, or provide the terms and conditions upon which sales may be made when licensed, and the disposition to be made of the money received for licenses. The act does not purport to deal with fees for liquor licenses received by municipalities before the date of its enactment. Therefore, if the legal effect of the act is an apportionment of the license fees received by municipalities in the future between them and the state, it is a valid law. It is the settled law of this state that license fees are not taxes, within the meaning of our constitution, and that the legislature may appropriate money received for liquor licenses for the erection and maintenance of an asylum or hospital for inebriates. City of Rochester v. Upman, 19 Minn. 78 (108); State v. Cassidy, 22 Minn. 312, 21 Am. 765.

It is clear, then, that the defendant's claim that the act in question levies a tax upon public property cannot be sustained, unless it must be construed as levying a tax on money belonging to and in possession of the municipalities of the state. The fact that section 19 uses the words "tax" and "levied" does not necessarily determine the question; for we must construe the section as a whole, and ascertain just what the effect is of its provisions. Now, the section does not purport to levy a tax upon any money belonging to any municipality, but upon license fees for the sale of intoxicating liquors. It also

provides that, whenever a license is granted, two per cent. of the amount charged (received) for such license shall be set aside and immediately remitted to the state treasurer. It is manifest that the two per cent. is to be set aside—that is, segregated—and at once sent to the state treasurer when received; hence two per cent. of every license fee received by a municipality is not its property, but it belongs to the state, and that the so-called tax is not levied upon the property of the municipality.

We accordingly hold that the legal effect of the act is to appropriate two per cent. of all liquor license fees to the state for the erection and maintenance of a hospital farm for inebriates, and that it is not unconstitutional for the alleged reason that it levies a tax upon property exempt from taxation by our constitution.

2. It is the further contention of counsel for·the defendant that the general provisions of the act relating to the arrest, examination, commitment, detention, and treatment of an inebriate at the hospital are unconstitutional, because they deprive him of his liberty without due process of law, and that, such being the case, the whole act is void, for the reason that the legislature would not have provided for the acquisition and maintenance of a hospital farm for inebriates if it had been advised that the commitment features of the act were void. Counsel has submitted an exhaustive brief and argument in support of this contention. If the act had made no provisions for the commitment of inebriates to the hospital, and their detention and treatment therein, it would not, for that reason, have been unconstitutional. Chapter 10, p. 119, Laws 1873, entitled "An act to establish a fund for the foundation and maintenance of an asylum for inebriates," contained no provisions as to the commitment and detention of inebriates therein. In this respect it simply provided for commissioners, to be appointed by the governor, to locate and erect a state asylum for inebriates, the same to be conducted under the guardianship of the state and upon the same general plan as other charitable institutions of the state. The law was held constitutional. State v. Cassidy, 22 Minn. 312, 21 Am. 765.

The legislature, however, in the act here in question, undertook to and did provide a general scheme for the commitment of inebriates to, and their treatment in, the proposed hospital; and it may be con-

ceded that, if the legislature had been advised that such general scheme was unconstitutional, it would not have enacted the other provisions of the statute for establishing the hospital and its maintenance. This concession, however, does not apply to incidental details, as to the treatment and parol of patients after commitment, which, perchance, may be found to be invalid in proceedings taken on behalf of any patient, and which, if invalid, the legislature may remedy. Therefore, if the general scheme for the compulsory commitment of inebriates to the proposed hospital for treatment without their consent, provided for in this act, is not constitutional, the whole act is void. But it is otherwise if such scheme is constitutional, and, if such be the case, the provisions of the act upon which this action is based, providing for the appropriation of two per cent. of liquor license fees to establish and maintain the hospital, are valid.

We express no opinion as to the validity of the incidental details of the act, to which reference has been made, and only decide the question of the validity of the provisions of the act relating to the commitment of inebriates, without their consent, to a public hospital for the treatment of inebriates to be provided and conducted by the state.

The provisions of the act relevant to such question are to the effect following: Section 2 declares that the term "inebriate" shall include every species of chronic inebriety, whether caused by the excessive use of intoxicating liquors, morphine, or other narcotics. Section 4 provides that upon the filing with the probate court of a verified petition that any person in the county is an inebriate and in need of care and treatment, or that it is dangerous for him to remain at large, stating therein the petitioner's relationship, if any, to the inebriate, and the indications of his lack of self-control in the use of liquors or narcotics, the court shall issue its warrant to bring the inebriate before it for examination as to his alleged inebriety. Section 5 provides for the appointment of two reputable persons, one of whom, at least, must be a qualified physician, and that such persons, with the judge of the court, shall constitute a board to examine the alleged inebriate and determine his inebriety. Section 21 provides that the county attorney shall be notified, and shall appear and take such action as may be necessary to protect the rights of such in-

ebriate and the interests of the county. Section 6 requires the board to hear all proper testimony, and the court may cause witnesses to be subpœnaed. When the examination is completed the board shall determine whether the person charged is an inebriate, and make and file a report of their proceedings, including their findings. Section 9 provides that if the board determine that such person is an inebriate he shall be committed to the hospital farm for treatment for an indeterminate period, but not for more than two years without being released on parol, and, further, that such person shall have a right to appeal from the decision of the probate court to the district court, and that on such appeal all questions involved in such examination shall be tried de novo. Section 11 requires that whenever a person is discharged from the hospital a certificate of such fact shall be sent to the judge of probate.

The provisions of the act relating to the examination and commitment of an alleged inebriate carefully safeguard his rights, providing, as they do, for full notice and opportunity to be heard, and a trial of all questions by a jury in case he appeals to the district court. They are substantially the same, with the exception of the right of appeal, as those relating to the examination and commitment of insane persons. R. L. 1905, §§ 3852–3861.

There is, however, a clear distinction between a person who gets drunk and an insane person, and it may be conceded that one who is simply a drunkard, but is able properly to take care of himself, his family, and his property, and is not a menace to the public, cannot be committed to and detained in a hospital for inebriates without his consent, for the personal rights and liberties of such a person are guaranteed by the constitution. 15 Am. & Eng. Enc. (2d Ed.) 243. But the state, in the exercise of its police power, has the undoubted right to punish drunkenness, and to provide for the detention and treatment in hospitals controlled by it of those who are habitual drunkards, and have so far lost the power of self-control that they are either incapable of properly caring for themselves or are a menace to the public weal. The state has the power to reclaim submerged lands, which are a menace to the public health, and make them fruitful. Has it not, also, the power to reclaim submerged men, overthrown by strong drink, and help them to regain self-control?

The state for many years has punished drunkenness as a crime by a fine or imprisonment, and for the third and all subsequent offenses by imprisonment alone. Laws 1907, p. 235, c. 208. The necessary effect of the enforcement of the statute against drunkenness is to deprive the person guilty of the offense of his property and his liberty for a time; but no question has ever been made in the courts of this state as to the validity of such a statute. The trend, however, of legislation is to treat habitual drunkenness as a disease of mind and body, analogous to insanity, and to put in motion the power of the state, as the guardian of all of its citizens, to save the inebriate, his family, and society from the dire consequences of his pernicious habit. 15 Am. & Eng. Enc. (2d Ed.) 229. The statute here under consideration is of such a character. It is not a penal, but a paternal, statute, seeking, not the punishment of the inebriate, but the safeguarding of his interests and the safety of the public, by treating him as, what he is in fact, a man of unsound mind, and placing him under the guardianship of the state, to the end that he may be healed of his infirmity. The act provides that such guardianship shall be administered by the probate court, and there can be no question of the jurisdiction of such court; for the constitution (section 7, art. 6) confers upon it jurisdiction over the general subject of guardianship of persons. State v. Wilcox, 24 Minn. 143.

Again, the statute does not seek to place under the guardianship of the state hospital for inebriates persons who are guilty of occasional acts of drunkenness and who are capable of controlling themselves and their property. It is limited to habitual drunkards—that is, to persons who have lost the power of will to control their appetite for intoxicating liquors or narcotics, and have the fixed habit of drunkenness (4 Words & Phrases, 3202), who are in need of care and treatment, and to those it would be dangerous to leave at large. The difference between such persons and insane persons is one of degree only, and they lawfully may be so treated by the state without any impairment of their constitutional rights. That the act in question is limited to such inebriates is quite obvious from the reading of sections 2 and 4 thereof. The term "inebriate," as used in the act, "includes every species of chronic inebriety"; that is, habitual drunkenness. See the words "chronic" and "inebriety," Webster's

International Dictionary. Hence an inebriate, as defined by the act, is an habitual drunkard.

The decision of this court in the case of Foreman v. Board of County Commrs. of Hennepin County, 64 Minn. 371, 67 N. W. 207, cited by the defendant, is not opposed to, but is in accord with, the views herein expressed. The act under consideration in that case was held invalid because it did not contain any of the elements of guardianship, and assigned powers and duties to probate judges beyond those authorized by the constitution. It was, however, stated in the opinion, by Mitchell, J., that "if the act under consideration provided for committing habitual drunkards to the guardianship of the officers of an institute for the treatment of drunkenness, as the statute considered in State v. Wilcox, supra, provided for committing insane persons to the hospitals for the insane, the jurisdiction of the probate judge could be sustained, and on the same grounds."

In the case of Murray v. Board of County Commrs. of Ramsey County, 81 Minn. 359, 84 N. W. 103, 51 L. R. A. 828, 83 Am. St. 379, the law under consideration was held unconstitutional as class legislation. The case of State v. Ryan, 70 Wis. 676, 36 N. W. 823, also cited by counsel, is not here in point, for the reason that the statute considered in that case proceeded, as stated in the opinion of the court, "upon the sole theory that the victim may be arrested, brought before a judge of a court of record at chambers, and, if found by him to be 'an inebriate, habitual or common drunkard,' he may, without the existence of any other fact or condition, and without any trial in any court of law, imprison him for two years, without any provision for his release. We are forced to the conclusion that the relator has been deprived of his liberty without due process of law, and denied the equal protection of the law."

We hold, for the reasons we have stated, that the general scheme provided by the act here under consideration for the commitment to and detention at a hospital farm, maintained and controlled by that state, of the class of inebriates designated in the act, is constitutional. It follows that the provision of the act relating to the payment to the state by all municipalities of two per cent. of the amount received by them for liquor licenses is valid and enforceable.

Order affirmed.