## STATE v. LOUIS SIMENSON.[1]

October 18, 1935.

No. 30,493.

*Louis H. Smith, Hall & Catlin,* and *Robert L. Palmer,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *J. H. Manion,* County Attorney, for the State.

I. M. OLSEN, JUSTICE.

The defendant appeals from an order denying his motion for a new trial. He was charged, in an information filed by the county attorney, with having, on April 10, 1934, at the city of Pipestone, stolen and carried away from a building in said city, in the nighttime, a number of automobile tires and tubes and certain containers full of lubricating oil, all of the reasonable aggregate value of $100, the charge being grand larceny in the first degree. Defendant pleaded not guilty. He was tried on said information in

[1] Reported in 262 N. W. 638.

the district court of Pipestone county on the 13th and 14th days of June, 1934, and was, by the jury, found guilty of the crime charged in the information.

1. The sole question presented on this appeal is whether there was such misconduct on the part of the jury in the case as to require a new trial. It appears that at the conclusion of the trial and while the jury were deliberating they were taken to a restaurant for a meal, and that in going back from the restaurant to the courthouse, where they were deliberating, and while in charge of two bailiffs, they went, or were taken, to the building from which the property was stolen and there stopped and made some investigation. It appears that the defendant had testified that he first saw these tires that were stolen while passing the building or being in a car in front of the building in the nighttime and that he saw them through windows of the building. Apparently the jurors made some investigation as to whether or not the tires could have been seen from the street in front of the building, the building being set back some 40 or more feet from the street. The court, after hearing the motion for a new trial on the ground of misconduct of the jury, made an order denying the motion. In denying the motion the court was of the opinion that anything the jurors saw or learned as a result of their inspection of the building could not have had much, if any, bearing on the question of insanity.

The court had not made any order authorizing the jury to go to or inspect the building. Under the decisions of this court, in civil actions at least, the rule is that where a question of misconduct of jurors is presented it is for the trial court, in the first instance, to decide whether the misconduct was prejudicial to the party complaining, and the decision of the trial court on that question is entitled to weight. If the court can determine with reasonable certainty that the misconduct did not affect the result, the verdict should stand. Lyons v. Dee, 88 Minn. 490, 93 N. W. 899; MacKinnon v. City of Minneapolis, 117 Minn. 261, 135 N. W. 814; Thoreson v. Quinn, 126 Minn. 48, 147 N. W. 716; Spinner v. McDermott, 190 Minn. 390, 251 N. W. 908.

The rule is stated in 16 C. J. 1171, as follows:

"Generally, the mere fact that the jury made an unauthorized visit to the place of the crime is not ground for a new trial, where they were not guilty of any misconduct while there and could not have acquired any improper information that might have influenced their verdict, which presents a question largely for the determination of the trial court."

That it was misconduct on the part of the jury to visit and inspect the building without order of the court or any notice to defendant must be conceded, and the inquiry resolves itself into the question of whether or not the court was justified in its conclusion that the misconduct did not influence the jury to defendant's prejudice.

We are met with a record which does not purport to contain all of the evidence. The attorneys stipulated that the court might settle the case on a transcript of the testimony of only two witnesses, the information herein, the affidavits used on the motion for a new trial, together with the verdict, sentence, judgment of the court, notice of motion for a new trial, and the order of the court denying the motion. The charge of the court is not part of the settled case and is not before us. It is apparent from the record that there were several other witnesses whose testimony is not included in the settled case. One of these witnesses, as stated by counsel in the argument, was a medical witness, who testified on the question of insanity. The defendant, at the trial and in his appeal, admits the taking of the property and that there was sufficient evidence to sustain the conviction in the case unless he was absolved from conviction on the ground of insanity. The only possible thing that the jury could have learned by their examination and inspection of the building from which the property was stolen was whether the defendant testified truthfully in saying that he saw these tires while in his automobile passing or stopping in the street in front of the building. That apparently was not a material question in the case. The taking being admitted, it was in our view immaterial at what time he first saw and knew the tires were in the building. Reading the testimony of the defend-

ant, which on this record is the only evidence which could be claimed to tend to show insanity, we are of the opinion that the jury could not have been influenced by their inspection of the building.

2. A careful reading of the testimony of the defendant fails to show any question of fact for the jury on the question of insanity. We think his evidence shows that defendant was not insane within the meaning of our statutes at the time this crime was committed. 2 Mason Minn. St. 1927, §§ 9914 and 9915, provide as follows:

"A morbid propensity to commit prohibited acts existing in the mind of a person who is not shown to have been incapable of knowing that such acts were wrong shall constitute no defense."

"No person shall be tried, sentenced, or punished for any crime while in a state of idiocy, imbecility, lunacy, or insanity, so as to be incapable of understanding the proceedings or making a defense; but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of said causes, as not to know the nature of his act, or that it was wrong."

It is further provided by § 9913 of the statutes:

"Every person is presumed to be responsible for his acts, and the burden of rebutting such presumption is upon him."

State v. Brown, 12 Minn. 448 (538); State v. Gut, 13 Minn. 315 (341); State v. Hanley, 34 Minn. 430, 26 N. W. 397. Defendant testified, as to his history, that he had been in the habit of stealing ever since he was seven or eight years old; that he had been punished by his teachers for disobedience and failure properly to behave; that he had been punished by his parents on many occasions; that he had continued to steal property of different kinds, including theft of an automobile, prior theft of some tires and a battery; that he had been with a number of boys in throwing rocks at a train; that he had been implicated in a holdup where his companions made use of a gun; that he had served two terms in the penitentiary. Most of the jail sentences and imprisonments had been for larceny. He further testified that when he saw something that he thought

he wanted he was unable to resist the impulse to take it and that he took it without realizing that it was wrong. He testified that he did not think it was wrong to steal. He had inherited some property from his parents and was not in need of money for his support. After he broke into the building and stole the property here involved, which was at about 11 o'clock at night, he drove with the property to Sioux Falls, South Dakota, where he attempted to sell it. He testified that in stealing the property he thought he could make a little easy money selling the tires at Sioux Falls. He testified, again, that when he stole an automobile he stole it for the purpose of selling it. His second sentence to the penitentiary was for being a party to the holdup mentioned. On cross-examination, he testified in part as follows:

Q. "Then you knew you would be punished for stealing tires, didn't you?

A. "I didn't know.

Q. "Well, you have been punished several times for stealing things?

A. "Yes.

Q. "You knew it was wrong to steal these tires, didn't you?

A. "Yes.

Q. "At the time you stole these tires you knew you might be punished if you were caught?

A. "I didn't care.

Q. "But you knew you might be punished?

A. "I didn't figure on getting caught.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. "Why isn't it wrong to steal, then?

A. "That was just—

Q. "But you know it is wrong?

A. "Yes, sir.

Q. "You know there is laws against it?

A. "Sometimes."

In reference to the theft of an automobile at a prior time, he testified in part:

Q. "What were you going to do with the automobile?

A. "Sell it.

Q. "Get some more easy money?

A. "Yes, sir."

He testified that he had lied to the officers, that he had lied to his teachers, but claimed that he was telling the truth on the stand. His attention, in the court room, was called to a pencil in the pocket of a man present, and he was asked whether, with the man looking at him, he would take the pencil or would wait until he was not looking. His answer was: "If I wanted it I would take it." Further on he testified:

Q. "You know you are on trial for stealing these tires, don't you?

A. "I just took them.

Q. "But you know you are on trial for doing that?

A. "Yes.

Q. "And you knew at the time you took them it was wrong to do it?

A. "Yes."

Again, he testified on redirect examination by his own counsel:

Q. "Now if you did take that man's pencil there, just steal it right at this moment, would there be anything wrong about it?

A. "Yes.

Q. "And while you were stealing the pencil just at the moment you were taking it, would you think it was wrong or would you know it was wrong?

A. "Yes.

Q. "And you would still go on and take it?

A. "Yes."

The most that can be said of his testimony is that defendant may have had an uncontrollable impulse to steal or commit crimes while conscious of the nature and quality of the act and knowing that it was wrong. That is not a sufficient showing of insanity under our statutes above quoted. State v. Scott, 41 Minn. 365, 43 N. W. 62. On the evidence in the record before us, we think there was no evidence to go to the jury on the question of insanity; that the

defendant had not overcome the presumption of responsibility for his acts and had not in any way sustained the burden of proving insanity. In that view of the case, the misconduct of the jury in examining the premises in question could have had no influence on the jury's verdict.

The order appealed from is affirmed.