# STATE EX REL. CHARLES EDWIN PEARSON v. PROBATE COURT OF RAMSEY COUNTY AND ANOTHER.[1]

June 30, 1939.

No. 32,163.

*Otis H. Godfrey* and *Joseph F. Cowern,* for relator.

*J. A. A. Burnquist,* Attorney General, and *John A. Weeks,* Assistant Attorney General, for respondents.

[1]Reported in 287 N. W. 297.

GALLAGHER, CHIEF JUSTICE.

On April 27, 1939, James A. Cook, a police officer of the city of St. Paul, filed in the probate court of Ramsey county a petition verified on information and belief, charging one Charles Edwin Pearson with being a psychopathic personality as defined by L. 1939, c. 369, and praying for his commitment according to law. On certification by the county attorney of his satisfaction that good cause existed for the institution of the proceedings, the probate court issued an order requiring the sheriff of Ramsey county forthwith to bring the said Pearson before the court and another order fixing a hearing on the petition for May 5, 1939, at two o'clock p. m.

Before the service of these orders, relator applied to this court for a writ of prohibition, and on his verified petition attacking the constitutionality of the act under which the proceedings were instituted we issued a temporary writ prohibiting the probate court from proceeding with the hearing until the further order of this court. The matter is now here on relator's application to make the writ permanent.

Because of a recognized need for legislation to deal with sex offenders and a belief, shared in by medical authorities and others, that sex crimes are committed because of a weakness of the will as well as of the intellect, the 1939 legislature enacted c. 369, entitled: "A bill for an act relating to persons having a psychopathic personality." Section 1 of the act reads:

"The term 'psychopathic personality' as used in this act means the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons."

Section 2, in part, reads:

"Except as otherwise herein or hereafter provided, all laws now in force or hereafter enacted relating to insane persons, to persons alleged to be insane, and to persons found to be insane, shall apply

with like force and effect to persons having a psychopathic personality, to persons alleged to have such personality, and to persons found to have such personality, respectively."

The act also provides that the facts be submitted to the county attorney and his approval be procured before a petition be filed with the probate court; that the probate judge may at his discretion exclude the public from the hearing; that the patient may be represented by counsel, and if the court determines that the patient is financially unable to obtain counsel it is empowered, but is not required to appoint, counsel for him; and that the patient shall be entitled to have subpoenas issued to compel the attendance of witnesses. From a finding that a "patient" is a "psychopathic personality," he may appeal to the district court upon compliance with the provisions of 3 Mason Minn. St. 1938 Supp. §§ 8992-166, 8992-167, 8992-169, and 8992-170.

Section 3 of the act reads:

"The existence in any person of a condition of psychopathic personality shall not in any case constitute a defense to a charge of crime, nor relieve such person from liability to be tried upon a criminal charge, unless such person is in a condition of insanity, idiocy, imbecility, or lunacy within the meaning of the laws relating to crimes and criminal procedure."

Relator challenges the constitutionality of L. 1939, c. 369, on three grounds. He contends (1) that it violates Minn. Const. art. 6, § 7, defining and limiting the jurisdiction of probate courts; (2) that it violates Minn. Const. art. 4, § 27, which reads: "No law shall embrace more than one subject, which shall be expressed in its title."; and (3) that it is void because it is uncertain and indefinite and violates U. S. Const. Amend. XIV, and other constitutional provisions.

■ We deal first with the question of the power of the legislature under our constitution to confer upon the probate court jurisdiction over persons having what is termed a "psychopathic personality."

Minn. Const. 6, § 1, reads:

"The judicial power of the state shall be vested in a supreme court, district courts, courts of probate, justices of the peace, and such other courts, inferior to the supreme court, as the legislature may from time to time establish by a two-thirds vote."

Section 7 of the same article, in part, reads:

"A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship, but no other jurisdiction, except as prescribed by this Constitution."

It will be noted that the constitution specifically limits the jurisdiction of the probate court to "estates of deceased persons and persons under guardianship." If persons having "psychopathic personalities" are to be included among those over whom the probate court has jurisdiction, it must be because they are persons subject to guardianship. The constitution does not specifically state what class of persons are subject to guardianship but leaves the regulation of that question to the legislature. It was so decided in State ex rel. Chesley v. Wilcox, 24 Minn. 143, 148, where the court said:

"The manner in which jurisdiction conferred by the constitution on any court or officer shall be exercised when not prescribed by the constitution itself, or the power to regulate it vested elsewhere, may be regulated by the legislature."

It was there held that the putting under guardianship of all persons who are proper subjects for it—insane persons, incorrigible drunkards, idiots, spendthrifts, as well as minors—comes within the jurisdiction of the probate court.

While this court in State ex rel. Chesley v. Wilcox, *supra,* referred only to insane persons, incorrigible drunkards, idiots, spendthrifts, and minors as included in the class subject to guardianship within the jurisdiction of the probate court, we do not think it was intended for all time to limit the classification to those named or to deprive the probate court of jurisdiction over other types of "unnaturals" such as the class involved herein.

Leavitt v. City of Morris, 105 Minn. 170, 117 N. W. 393, 17 L.R.A.(N.S.) 984, 15 Ann. Cas. 961, held constitutional L. 1907,

c. 288, creating and establishing a hospital farm for inebriates and authorizing the state board of control to purchase lands therefor and to provide means for the building and maintenance of such institution. This case recognized the jurisdiction of the probate court over persons defined by the act as "inebriates" and approved the procedure prescribed for hearing and commitment.

The constitutionality of L. 1917, c. 397, known as "The Juvenile Court Act," was determined in Peterson v. McAuliffe, 151 Minn. 467, 187 N. W. 226. That act placed jurisdiction over juvenile offenders in the district court in counties having more than 33,000 inhabitants and in the probate court in counties having not more than 33,000 inhabitants.

L. 1939, c. 369, § 1, defines the term "psychopathic personality" to mean "the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons." Dorland, American Illustrated Medical Dictionary (15 ed.) defines "psychopathic" as "pertaining to mental disease." It naturally follows that a "psychopathic personality" is one characterized by a mental disorder. It is well recognized that there are many types and degrees of mental disorders. An article appearing in 2 *American Journal of Medical Jurisprudence,* March-April, 1939, No. 3, on "Mental Abnormality in Relation to Crime" (Draper), pp. 161, 163, refers to "psychopathic personalities" thus:

"These are individuals who show a lifelong and constitutional tendency not to conform to the customs of the group. They habitually misbehave. They have no sense of responsibility to their fellow-men or to society as a whole. Due to their inherent inability to follow any one occupation, they succumb readily to the temptation of getting easy money through a life of crime. There is usually a history of delinquency in early life. These individuals fail to learn by experience. They are inadequate, incompatible, and in-

efficient. This class is sometimes designated as 'Constitutional Psychopathic Inferiority.' Before making this diagnosis, every other diagnostic possibility must be considered and excluded. In this group we see pathological lying, prostitution, vagrancy, illegitimacy, alcoholism and drug addiction. The term 'moral deficiency' is sometimes used to characterize this group. These patients may have psychotic episodes superimposed upon the trends just mentioned. Many of these individuals come into contact with the courts on account of threats, assaults, quarrels and vagrancy."

It is to be noted that the definition given above includes not only the sexually irresponsible but also others of immoral tendencies. The fact that the legislature has chosen to limit the class to the former does not make the act more or less objectionable from a jurisdictional standpoint. Whether the limitation constitutes a basis for objection on the ground that the title fails to express the subject of the act will be later considered.

While the abnormalities of the group placed under the jurisdiction of the probate court by this act differ in form from those which characterize inebriates, idiots, and insane persons, the need for observation and supervision is the same, and the considerations which led this court in State ex rel. Chesley v. Wilcox, *supra,* to recognize the latter as being proper subjects for guardianship apply with equal force to the former. In the interest of humanity and for the protection of the public, persons so afflicted should be given treatment and confined for that purpose rather than for the purpose of punishment. This we believe to be true even though their mental deficiencies might not be such as to require absolving them from the effects of the criminal statutes. We find no difficulty in holding that the legislature may give to the probate court jurisdiction over such personalities.

■ It is urged by relator that L. 1939, c. 369, is void because in violation of Minn. Const. art. 4, § 27, which reads: "No law shall embrace more than one subject, which shall be expressed in its title." Cases of two kinds arise under this and similar constitutional provisions: (1) Those in which it is claimed that the title is so gen-

eral in its terms that it does not fairly express the subject of the act; and (2) those in which it is claimed that the subject as expressed in the title excludes, by implication, certain provisions of the act. The instant case is of the first type.

The objects of the constitutional provision have been often expressed in the decisions of this court. They are, first, to prevent "log-rolling legislation" or "omnibus bills," by which a large number of different and disconnected subjects are united in one bill and then carried through by a combination of interests; and, secondly, to prevent surprise and fraud upon the people and the legislature by including provisions in a bill whose title gives no intimation of the proposed legislation, or of the interests affected. 6 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 8906, and cases cited.

While the provision of the constitution is mandatory, it is to be given a liberal and not a strict construction. Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 924, 28 A. S. R. 382. The rules to be applied to its construction and the tests to determine whether the law is repugnant to it are expressed by Mr. Justice Mitchell in Johnson v. Harrison, *supra,* in language so clear that it warrants adoption [47 Minn. 577].

"The term 'subject,' as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. * * * All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject. The large number of related or cognate matters often treated of under some comprehensive title, such as 'Criminal Code,' 'Penal Code,' 'Code of Civil Procedure,' 'Private Corporations,' 'Railroad Corporations,' and the like, are familiar illustrations of what may be legitimately included in one act. * * * The subject may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single

subject, and not several. The connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as, for example, of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical; it is enough that the matters are connected with and related to a single subject in popular signification. The generality of the title of an act is no objection, provided only it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected. The title was never intended to be an index of the law."

These rules and tests have been applied in a great many later cases. City of Crookston v. Board of Co. Commrs. 79 Minn. 283, 82 N. W. 586, 79 A. S. R. 453; Lien v. Board of Co. Commrs. 80 Minn. 58, 82 N. W. 1094; State ex rel. Skyllingstad v. Gunn, 92 Minn. 436, 100 N. W. 97; Atwell v. Parker, 93 Minn. 462, 101 N. W. 946; Johnson v. Schmahl, 119 Minn. 179, 137 N. W. 741; State v. Sharp, 121 Minn. 381, 141 N. W. 526; Gard v. County of Otter Tail, 124 Minn. 136, 144 N. W. 748; State v. Droppo, 126 Minn. 68, 147 N. W. 829; State ex rel. City of Hastings v. Dakota County, 142 Minn. 223, 171 N. W. 801; Naeseth v. Village of Hibbing, 185 Minn. 526, 242 N. W. 6; Blaisdell v. Home Bldg. & L. Assn. 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507.

A title broader than the statute, if it is fairly indicative of what is included in it, does not offend the constitution. State .ex rel. Young v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527; Seamer v. G. N. Ry. Co. 142 Minn. 376, 172 N. W. 765. Whether or not a title is expressive of the subject matter of an act must be determined with reference to practical considerations, the purpose of the constitutional provision, the approach adopted by this court to the problem in the past, and the disposition of other cases involving titles of similar brevity.

Applying these principles to the statute before us, it can be said: (1) If the term "psychopathic personality" gives sufficient notice

that the act relates to sexually irresponsible persons, the class embraced by the terms of the statute is adequately named in the title; and (2) if the act affects such persons in a manner and by a mode reasonably to be associated with laws of this type, the fact that the title fails to mention such provisions does not render it too general from a constitutional viewpoint.

It is true that the term "psychopathic" is not a part of the working vocabulary of most people. Yet the reasonably well informed recognize it as having reference to mental disorders. (See Dorland, *American Illustrated Medical Dictionary* [15 ed.] *supra*. To those concerned with mental cases, it connotes a condition of the mind causing the person afflicted to be hopelessly immoral. In either case, the fact that the law deals with the sexually irresponsible would not come as a surprise to legislators or members of the public who might have occasion to read its title.

Since the title indicates that the act deals with persons of abnormal minds, the manner in and the mode by which the law is to operate are clearly germane to the subject expressed. That the statute is essentially the same in these respects as are the laws of this state which apply to insane, idiots, and inebriates appear sufficiently to indicate this fact.

Examination of titles held not to be violative of the constitutional provision fortifies the conclusion which we have reached. In Johnson v. Harrison, *supra,* the title in question was "An act to establish a probate code." The body of the entitled act includes provisions which cast the descent and determine in whom property left by an intestate shall vest and which allow this title to be asserted by the heir in courts other than probate wholly independent of any action of or administration in the latter, as well as provisions fixing the jurisdiction of and procedure in the probate court.

In State v. McDow, 183 Minn. 115, 235 N. W. 637, it was held that "an ordinance relating to disorderly houses, and houses of ill-fame and common prostitutes" is not repugnant to the charter provision which requires that the title to an ordinance shall not contain more than one subject. And in Kerst v. Nelson, 171 Minn. 191, 197, 213 N. W. 904, 906, 54 A. L. R. 495, an act entitled "An act in

relation to the organization of the state government" was considered to be sufficiently specific. See also Leavitt v. City of Morris, 105 Minn. 170, 117 N. W. 393, 17 L.R.A.(N.S.) 984, 15 Ann. Cas. 961; State v. Helmer, 169 Minn. 221, 211 N. W. 3; State v. People's Ice Co. 124 Minn. 307, 144 N. W. 962; State v. Women's and Children's Hospital Assn. 150 Minn. 247, 184 N. W. 1022.

Turning to recent decisions from other states having similar constitutional provisions, we find that the following titles have been considered not too general in a constitutional sense: "An act relating to marriage and divorce" (Titus v. Titus, 96 Col. 191, 193, 41 P. [2d] 244) ; "An act relating to corporations" (759 Riverside Ave. Inc. v. Marvin, 109 Fla. 473, 475, 147 So. 848, 849) ; "An act relating to disputes concerning terms and conditions of employment" (Fenske Bros. Inc. v. Upholsterers Int'l. Union, 358 Ill. 239, 242, 193 N. E. 112, 114, 97 A. L. R. 1318) ; "An act concerning husband and wife, and declaring an emergency" (Clark v. Clark, 202 Ind. 104, 111, 172 N. E. 124, 126) ; "An act relating to cities of the first class" (City of Wichita v. Board of Co. Commrs. 110 Kan. 471, 204 P. 693) ; "An act relating to crimes and punishments" (Allen v. Commonwealth, 272 Ky. 533, 114 S. W. [2d] 757) ; "An act concerning the welfare of children" (Richardson v. State Bd. of Control, 98 N. J. L. 690, 121 A. 457, affirmed in 99 N. J. L. 516, 123 A. 720) ; "An act relating to warehouse receipts" (Commonwealth v. Rink, 267 Pa. 408, 110 A. 153).

We conclude, therefore, that the constitutional mandate is not violated by the title here in question. Its defects may offend the principles of legislative draftsmanship but not those of constitutional law.

■ Is the act so indefinite and uncertain as to make it void? Conceding that it is imperfectly drawn, the statute is nevertheless valid if it contains a competent and official expression of the legislative will. State v. Partlow, 91 N. C. 550, 49 Am. R. 652. Judicial interpretation cannot operate until the lawmaking department of the state has spoken intelligibly. On the other hand, out of deference to legislative authority, we must give effect to all its enactments, according to its intention, so far as we have constitutional

right and power. Attorney General v. City of Eau Claire, 37 Wis. 400, 438. To this end, we must, when confronted with a statute which is susceptible of different interpretations, accept that one which is in conformity with the purpose of the act and in harmony with the provisions of the constitution. See State v. Standard Oil Co. 61 Neb. 28, 33, 84 N. W. 413, 414, 87 A. S. R. 449; Grenada Co. Supervisors v. Brogden, 112 U. S. 261, 5 S. Ct. 125, 28 L. ed. 704.

Statutes must be so construed as to give effect to every section and part, and when any doubts arise as to the constitutionality thereof such doubts must be resolved in favor of the law. Hurst v. Town of Martinsburg, 80 Minn. 40, 82 N. W. 1099; Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922. Again it has been said: "It is the bounden duty of courts to endeavor by every rule of construction to ascertain the meaning of, and to give full force and effect to, every enactment of the general assembly not obnoxious to constitutional prohibitions. But if, after exhausting every rule of construction, no sensible meaning can be given to the statute, or if it is so incomplete that it cannot be carried into effect, it must be pronounced inoperative and void." 1 Lewis' Sutherland, Statutory Construction (2 ed.) pp. 140, 141. See also 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8995, and cases cited; Aigler, "Legislation in Vague or General Terms," 21 Mich L. Rev. 831; 44 Harv. L. Rev. 1139; 45 Harv. L. Rev. 160.

Applying these principles to the case before us, it can reasonably be said that the language of § 1 of the act is intended to include those persons who by an habitual course of misconduct in sexual matters have evidenced an utter lack of power to control their sexual impulses and who as a result are likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of their uncontrolled and uncontrollable desire. It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would not only make the act impracticable of enforcement and perhaps unconstitutional in its application, but would also be an unwarranted departure from the accepted meaning of the words defined. See Draper, "Mental Ab-

normality in Relation to Crime," 2 Am. Jour. Med. Jur. No. 3, p. 163.

Section 2 of the act incorporates by reference all laws now in force or hereafter enacted relating to insane persons, to persons alleged to be insane, and to persons found to be insane. Such practice has been held proper. Hassett v. Welch, 303 U. S. 303, 314, 58 S. Ct. 559, 82 L. ed. 858; Hagler v. Small, 307 Ill. 460, 138 N. E. 849; Land Log & Lbr. Co. v. Brown, 73 Wis. 294, 40 N. W. 482, 3 L. R. A. 472. It has not been made to appear that those charged with administration of the insane laws have experienced any insuperable difficulties in understanding the provisions thereof. Since this act, in effect, merely extends the concept of insanity to include sexually irresponsible persons who are dangerous to others, we see no reason why such reference should be considered meaningless.

Section 3 of the act provides that the existence in any person of a condition of psychopathic personality shall not constitute a defense to a charge of crime. On its surface this section would appear to imply that persons with psychopathic personalities are sane. The confusion which is thus caused is obviated when we consider the limited scope of the term "insanity" when used to indicate a defense to crime. In this state an uncontrollable and insane impulse to commit crime, in the mind of one who is conscious of the nature and quality of the act, is not allowed to relieve a person of criminal liability. State v. Scott, 41 Minn. 365, 43 N. W. 62; State v. Simenson, 195 Minn. 258, 262 N. W. 638. See 17 Minn. L. Rev. 630. The act before us, in providing for the care and commitment of persons having uncontrollable and insane impulses to commit sexual offenses, treats them as insane. While the public welfare requires that they be treated before they have opportunity to injure others, it does not necessarily follow that their malady must excuse them from criminal conduct occurring in the past.

The final argument of the relator is that the act denies a "patient" a jury trial and fails to secure certain other rights of defendants in criminal proceedings. Since the proceedings here in question are not of a criminal character, we will confine ourselves to consideration of relator's right to a jury trial. While persons cannot be

adjudged insane and committed without notice and an opportunity to be heard (State ex rel. Blaisdell v. Billings, 55 Minn. 467, 57 N. W. 206, 794, 43 A. S. R. 525; State ex rel. Kelly v. Kilbourne, 68 Minn. 320, 71 N. W. 396; see 43 A. S. R. 531), the majority of the courts hold, and we think properly, that the constitutional right to a jury trial does not apply to proceedings of this type. In re Application of O'Connor, 29 Cal. App. 225, 155 P. 115; Gaston v. Babcock, 6 Wis. 490 (503); County of Black Hawk v. Springer, 58 Iowa, 417, 10 N. W. 791. Contra, In re McLaughlin, 87 N. J. Eq. 138, 102 A. 439; Commonwealth ex rel. Stewart v. Kirkbride, 2 Brewst. (Pa.) 419; Shumway v. Shumway, 2 Vt. 339.

If relator has a right to a jury trial, it is because such was provided at common law when our constitution was adopted. While no one has contended that "psychopathic personalities" were confined and treated at common law, the claim has been made that the issue of idiocy was, in early times, decided by a jury. The other view is that if such ever was the case the practice had been abandoned before our constitution was adopted. That we are committed to the latter belief appears quite unequivocally from the language of this court in Vinstad v. State Board of Control, 169 Minn. 264, 211 N. W. 12. Referring to proceedings in district court upon an appeal from an order of the probate court denying the petition of one adjudged feeble-minded for restoration to capacity, the court there said that the constitutional right of trial by jury does not apply to proceedings for placing persons under guardianship. The question of guardianship was held not triable by jury as a matter of right, either in probate or district courts. It was added, however, that the district court could, in its discretion, send an issue of fact to the jury for a special verdict.

We conclude that the act is constitutional both in form and in application.

The restraining order is vacated and the writ quashed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.