**In the Matter of Peter Richard RICKMYER.**

**No. CX–93–1446.**

Supreme Court of Minnesota.

June 30, 1994.

Rehearing Denied Aug. 15, 1994.

John E. Grzybek, St. Paul, for appellant.

Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst., St. Paul, for respondent.

## OPINION

SIMONETT, Justice.

The evidence fails to sustain a finding that appellant, a pedophile, is a psychopathic personality; appellant's commitment under the psychopathic personality statute is reversed.

In early 1991, after being arrested for spanking an 8–year–old boy on the buttocks, appellant-respondent Peter Richard Rickmyer, then age 34, pled guilty to one count of criminal sexual conduct in the second degree. As part of the plea negotiations, respondent received a 30–month stayed sentence with 9 months in the Ramsey County Workhouse, and was required to participate in a sex offender program. As Rickmyer approached the end of his 9–month period in the workhouse, Ramsey County petitioned for his commitment as a psychopathic personality. Minn.Stat. § 526.09 and .10 (1992).

Following the initial commitment hearing in October 1991, respondent was found to be a psychopathic personality and was committed to the Minnesota Security Hospital for evaluation. Thereafter, upon receipt of the hospital's 60–day report, a second commitment hearing was held, resulting in a decision dated April 20, 1993, which determined that respondent was a psychopathic personality and confirmed his commitment to the Minnesota Security Hospital. The court of appeals, in an unpublished opinion, affirmed. We granted appellant Rickmyer's petition for further review.

Appellant acknowledges this court has just recently upheld the constitutionality of the Psychopathic Personality Statute. *In re Blodgett,* 510 N.W.2d 910 (Minn.1994). He argues, however, that he is a "non-violent pedophile" and, as such, should not be considered a psychopathic personality. The facts necessary to an understanding of the issue are as follows.

Rickmyer has had several convictions for sexual contact with young boys. In 1981, he pled guilty to two counts of simple assault. In 1989, he pled guilty in Oklahoma to indecent exposure, having exposed his erect penis to some boys in a motel room, and was given 5 years probation. That same year after moving back to Minnesota, Rickmyer soon was involved in an incident of spanking a young boy on the buttocks, for which he pled guilty to fifth degree assault. The most recent "spanking" incident occurred in 1991 and led to the workhouse sentence already described.

Three psychologists testified at the first hearing, two of them agreeing Rickmyer fit the profile of a pedophile and was dangerous to children. The third psychologist felt respondent was not dangerous and could modify his behavior, and his testimony was supported by that of a psychotherapist. Police reports were received in evidence. One report indicated respondent had twice fondled the buttocks of an 8–year–old boy at a public playground; in another report, a 10–year–old boy stated respondent had touched his private parts "a lot of times" and put his hands inside the boy's underwear and squeezed his buttocks. Another child stated respondent had tried to touch his buttocks and had spanked "a lot" of kids at the playground.

At the second hearing, evidence was received that Rickmyer had failed to cooperate in the sex offender programs. Three psychologists testified, all agreeing defendant was not mentally ill but was a pedophile. Dr. Robert G. Neal said respondent was unable to stop his molestations and was a danger to children. Dr. James Jacobsen gave much the same testimony. Dr. John Austin testified respondent was "relatively nonaggressive, nonviolent, and non-dangerous," but that it was "more likely than not" that he would "continue to engage in the same kinds of behaviors and attitudes and ways of thinking that lead to sexual contact with kids." The Security Hospital staff, in its 60–day report, diagnosed respondent as having pedophilia and a personality disorder. The report stated respondent continued to reject treatment, and concluded that respondent would continue to present a danger to others "in terms of reoffending," if released to the community at large.

The trial court concluded that respondent was a psychopathic personality. The trial court found that respondent suffered from a severe personality disorder and pedophilia; that he had engaged in an habitual course of sexual misconduct over a period of years, and that he showed an utter lack of power and ability to control his sexual impulses to touch young children in the genital area. The trial court further found "[t]here is a substantial likelihood that he will further engage in acts of a sexual nature capable of inflicting serious physical or mental harm to others."

Appellant argues that the evidence fails to support a determination that he is likely to inflict serious physical or mental harm to others. We agree.

The reach of the psychopathic personality statute is circumscribed by our *Pearson* case. *State ex rel. Pearson v. Probate Court of Ramsey County*, 205 Minn. 545, 287 N.W. 297 (1939), *aff'd* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). There must be (a) a habitual course of sexual misconduct, (b) an utter lack of power to control the sexual impulses, so that (c) it is likely the person will "attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire." *Pearson*, 205 Minn. at 555, 287 N.W. at 302.

But it would not be reasonable, we cautioned in *Pearson*, to apply the psychopathic personality statute "to every person guilty of sexual misconduct nor even to persons having strong sexual propensities." *Id.* As we said in *Blodgett*, the psychopathic personality "is an identifiable and documentable violent sexually deviant condition or disorder," and among the factors to be considered are the nature of the sexual assaults and the degree of violence involved. 510 N.W.2d at 915. Ordinarily, as was true in *Blodgett*, there is a pattern of sexual assaults creating the danger of infliction of serious physical harm. Compare, for example, the definition of "dangerous" in the phrase "mentally ill and dangerous" where "dangerous" is defined as likely to inflict "serious physical harm on another." Minn.Stat. § 253B.02, subd. 17 (1992).

There may be instances where a pedophile's pattern of sexual misconduct is of such an egregious nature that there is a substantial likelihood of serious physical or mental harm being inflicted on the victims such as to meet the requirements for commitment as a psychopathic personality. In this case, however, the record does not support the trial court's findings that respondent has inflicted or is likely to inflict serious physical or mental harm on his victims. Respondent's unauthorized sexual "touchings" and "spankings," while repellent, do not constitute the kind of injury, pain, "or other evil" that is contemplated by the psychopathic personality statute.

Reversed.