**In the Matter of James Lee SCHWENINGER.**

No. CX–94–825.

Court of Appeals of Minnesota.

Aug. 16, 1994.

Review Denied Oct. 27, 1994.

Michael J. Biglow, Minneapolis, for appellant Schweninger.

Michael O. Freeman, Hennepin Co. Atty., Carolyn Peterson, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by PETERSON, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

After a hearing, appellant was indeterminately committed as a psychopathic personality. The security hospital filed a report, and a hearing on his indeterminate commitment was held. The trial court committed appellant to the Minnesota Security Hospital for an indeterminate period as a psychopathic personality. James Lee Schweninger appeals. We reverse.

## FACTS

On October 2, 1990, appellant pleaded guilty to criminal sexual conduct in the first degree, second degree, and third degree, for incidents involving three juvenile male victims. M.H., age 13, told police appellant had performed oral sex on him at appellant's home during the summer of 1989. W.J., age six, stated that at appellant's home in the summer of 1989, appellant, while masturbating, had placed his penis in the victim's mouth and ejaculated. M.L., age seven, reported appellant had touched him on the clothing covering his penis during the summer of 1989.

Appellant was scheduled for release from prison on July 20, 1993. A petition for his commitment as a psychopathic personality was filed on June 18, 1993, and a hearing was held.

At the hearing, there was testimony as to whether appellant met the standards for commitment as a psychopathic personality. Appellant gave varying figures as to the number of boys he abused, but at the hearing he testified he had molested 17 children. Appellant gained access to the victims by bribing them, and the abuse involved mutual fondling, exposure and oral sex. Appellant sometimes wore pants with a hole in the crotch to facilitate the exposure.

Dr. James Alsdurf, a psychologist, evaluated appellant in 1990 for a presentence psychological report after he pled guilty to the criminal sexual conduct charges. Dr. Alsdurf diagnosed appellant as an entrenched pedophile with a 15–year history of varying sexually inappropriate behavior toward young boys. He recommended treatment at the security hospital. Dr. Alsdurf described appellant as exhibiting classic grooming behavior, rather than sadistic or aggressive behavior. He found it significant that appellant did not use violence. This lessened, he believed, but did not rule out the likelihood that he was a psychopathic personality.

Dr. Douglas Fox, a psychologist, diagnosed appellant as suffering from pedophilia, same sex. Dr. Fox described Schweninger: "[h]e exhibits impulsiveness of behavior and has a very high risk of reoffending sexually. He is not physically dangerous, but is very emotionally abusive. On the psychopathic personality continuum, he is on the mild side with regard to physical violence."

Dr. Fox said he has never seen a person with a complete and utter lack of control over sexual impulses, as this would, he thought, require a person to offend at every opportunity, including in the courtroom. He described appellant as lacking control over his sexual impulses, although the majority of his offenses were planned and said that appellant needs intensive ongoing inpatient treatment at a secure facility for his sexual offenses.

Dr. Satterfield, the court-appointed examiner and a psychiatrist, also diagnosed appellant as suffering from pedophilia, same sex type, and mixed personality. She testified that appellant has exhibited impulsive behavior, and engaged in an habitual course of sexual misconduct; he has not engaged in overt violent behavior; because appellant has not been treated successfully, he is not in control of his impulses to be sexual with children, and has a very high risk of reoffending.

Dr. Satterfield expressed the opinion that appellant needs treatment for his pedophilia and the security hospital was the only appropriate alternative available to meet his needs.

The trial court committed appellant to the Minnesota Security Hospital as a psychopathic personality. The hospital submitted a report and the review hearing was held.

Dr. Michael Farnsworth, the psychiatrist who is the clinical director for the sex offender program at the security hospital, testified at the review hearing and diagnosed appellant with pedophilia, same sex, and a personality disorder with strong schizoid or avoidant personality traits. He said appellant has engaged in plotting, planning, seduction, payments and coercive behavior, which is different from impulsive lack of control or an impulse disorder. He perceived pedophilia, however, as an ingrained behavior pattern with a high risk of reoccurrence without intervention and monitoring.

The trial court committed appellant to the Minnesota Security Hospital for an indeterminate period as a psychopathic personality. James Schweninger appeals, and we reverse.

## ISSUE

Did the trial court clearly err in determining appellant met the standards for commitment as a psychopathic personality?

## ANALYSIS

Minn.Stat. § 526.09 (1992) defines psychopathic personality as:

[t]he existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any such conditions, as to render such person irresponsible for personal conduct with regard to sexual matters and thereby dangerous to other persons.

The Minnesota Supreme Court limited the application of the psychopathic personality statute to include only those persons

who, by a habitual course of misconduct in sexual matters, have evidenced an utter lack of power to control their sexual impulses and who, as a result, are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire.

*State ex rel. Pearson v. Probate Court of Ramsey County,* 205 Minn. 545, 555, 287 N.W. 297, 302 (1939), *aff'd,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). The *Pearson* court admonished against an overbroad interpretation of the statute:

> It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would * * * make the act impracticable of enforcement and, perhaps, unconstitutional in its application.

*Id.*

"The psychopathic personality statute identifies a volitional dysfunction which grossly impairs judgment and behavior with respect to the sex drive." *In re Blodgett,* 510 N.W.2d 910, 915 (Minn.1994), *pet. for cert. filed* (U.S. June 9, 1994) (No. 93–9493). In discussing the development of this concept, our Supreme Court said:

> The psychopathic personality is sometimes equated with the medically recognized "anti-social personality disorder"; it is, however, *limited to sexual assaultive behavior* and excludes mere sexual promiscuity. It also excludes other forms of social delinquency. Whatever the explanation or label, the "psychopathic personality" is an identifiable and documentable *violent* sexually deviant condition or disorder. In applying the *Pearson* test, the court considers the nature and frequency of the sexual assaults, the *degree of violence* involved, * * * and such other factors that bear on the predatory sex impulse and the lack of power to control it.

*Id.* (footnotes omitted) (emphasis added). When misapplied, the remedy (said the majority) is, upon appeal, to obtain a reversal rather than to hold the statute unconstitutional. *Id.* (citing *In re Rodriguez,* 506 N.W.2d 660, 663 (Minn.App.1993) (reversing a psychopathic personality commitment of nonviolent exhibitionist), *pet. for rev. denied* (Minn. Nov. 30, 1993)). The reviewing court must determine whether the trial court's findings of fact are supported by the record as a whole and are not clearly erroneous. *See In re Joelson,* 385 N.W.2d 810, 811 (Minn.1986).

*Blodgett,* an affirmance of a commitment by a closely divided court, has had a considerable effect on interpretation of the statute. Recently, however, in two cases released the same day, the Supreme Court, in *reversing* two commitments under the psychopathic personality statute, set forth a comprehensive analysis for the guidance of the trial courts (and this court) in applying the statute.

In reversing the commitment of a non-violent (though "spanking") pedophile, the court cautioned:

> As we said in *Blodgett,* the psychopathic personality "is an identifiable and documentable violent sexually deviant condition or disorder," and among the factors to be considered are the nature of the sexual assaults and the degree of violence involved. 510 N.W.2d at 915. Ordinarily, as was true in *Blodgett,* there is a pattern of sexual assaults creating the danger of infliction of serious physical harm. Compare, for example, the definition of "dangerous" in the phrase "mentally ill and dangerous" where "dangerous" is defined as likely to inflict "serious physical harm on another." Minn.Stat. § 253B.02, subd. 17 (1992).

*In re Rickmyer,* 519 N.W.2d 188 (Minn.1994).

The court concluded that, while a pedophile's pattern of sexual misbehavior may be so egregious as to present a substantial likelihood of serious physical harm such as to meet the requirements for commitment, "[r]espondent's unauthorized 'touchings' and 'spankings' while repellent, do not constitute the kind of injury, pain, 'or other evil' that is contemplated by the psychopathic personality statute."

We conclude that *Blodgett,* particularly as applied in *Rickmyer,* precludes the commitment of appellant as a non-violent pedophile under the psychopathic personality statute.

In the companion case, *In re Linehan,* 518 N.W.2d 609 (Minn.1994), the supreme court, noting that appellant's criminal history met the first "habitual course of misconduct" element of the *Pearson* test, focused on the second and third elements: the "utter lack of power to control * * * sexual impulses";

and, the likelihood the person will "attack or otherwise inflict injury, loss, pain or other evil" on their victims. 518 N.W.2d at 610. Applying the second element, the Supreme Court noted that it is not enough for the trial court to use the *Pearson* language in a conclusory fashion when the underlying expert testimony has been given in terms of the original statutory definition. Since neither testifying doctors' opinions nor the appellant's behavior during incarceration supported the finding of uncontrollability, the court reversed for lack of "clear and convincing evidence [of] an utter lack of power to control his sexual impulses."

█ The trial court here found that appellant's behavior has demonstrated an utter lack of power to control his sexual impulses. Appellant argues that the trial court erred in that finding, contending it was not supported by the record. We agree. The record shows his conduct to have been planned and calculated. Dr. Farnsworth testified that appellant's history is characterized by plotting, planning, seductions, payments, and coercive behavior, which is different from an impulsive lack of control. At most, Dr. Farnsworth was unsure whether appellant was able to control his behavior.

Dr. Alsdurf cited appellant's grooming behavior which did not involve violence. Dr. Satterfield's testimony did not describe a lack of control to the extent required by the supreme court. The trial court found that appellant, when talking about exposing himself, "had to plan it, then he had to work up the courage to go out and do it." The trial court determination that appellant exhibited an utter lack of control is not supported by the evidence, and is clearly erroneous.

Appellant next contends that the trial court erred in finding he is likely to attack or otherwise inflict injury on others. *See Pearson*, 205 Minn. at 555, 287 N.W. at 302.

He asserts the record fails to support either the statutory "mentally ill and dangerous" standard of Minn.Stat. § 253B.02, subd. 17, or the psychopathic personality standard of Minn.Stat. § 526.09 as limited by caselaw. He argues that none of the experts testified using any scientific basis or base rate comparison studies to predict future dangerousness. The *Linehan* court has delineated factors the trial court must consider in predicting serious danger to the public:

(a) the person's relevant demographic characteristics (*e.g.*, age, education, etc.);

(b) the person's history of violent behavior (paying particular attention to recency, severity, and frequency of violent acts);

(c) the base rate statistics for violent behavior among individuals of this person's background (*e.g.*, data showing the rate at which rapists recidivate, the correlation between age and criminal sexual activity, etc.);

(d) the sources of stress in the environment (cognitive and affective factors which indicate that the person may be predisposed to cope with stress in a violent or nonviolent manner);

(e) the similarity of the present or future context to those contexts in which the person has used violence in the past; and

(f) the person's record with respect to sex therapy programs.

*Linehan,* 518 N.W.2d at 614. We note that four of these factors pertain to the violence exhibited by the person in the past as predictors of dangerousness and believe this to further compel the decision we reach herein.

█ We conclude that under *Blodgett* and *Rickmyer,* absent a showing of violence, persons in the class of repetitive pedophiles cannot be committed as psychopathic personalities, unless shown to have committed *violent* acts in the past, and shown to have such an utter lack of power to control their behavior that they are likely to do so in the future. This record does not support the commitment.

The dissent terms the sexual activities of this non-violent, same-sex pedophile as violent and constituting bodily harm, citing the criminal code, and making the surprising assertion that if this classification for purposes of indeterminate commitment is adopted "it follows under our criminal code that (such acts) are not violent or even assaultive." But the criminal code has its own statutory defi-

nitions, and most critics of the psychopathic personality law point to the criminal code as the proper vehicle for dealing with such behavior in the belief that increased sentences are the appropriate societal response. There is similarly no contention in this opinion that "a small child suffers no bodily harm, no assault, no violence, when led methodically into (such) episodes," contrary to the assertion of our dissenting colleague. We feel that the criminal code offers better hope for the protection of the public than does a misapplication of the psychopathic personality statute. Such misapplications, if not reversed, will add to the public conflict over opposing values. We fear assaults on our children, but the answer is not a corresponding assault on the constitution by use of preventive indeterminate detention.

## DECISION

The commitment of appellant as a psychopathic personality for an indeterminate period is reversed.

**Reversed.**

CRIPPEN, Judge (dissenting).

I concur in the determination of the court to properly limit application of Minn.Stat. §§ 526.09, 526.10 (1992).

The reach of the Psychopathic Personality Statute is limited by *Pearson.* Under *Pearson,* there must be (a) a "habitual course of misconduct in sexual matters" and (b) "an utter lack of power to control * * * sexual impulses" so that (c) it is likely the person will "attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire." *Minnesota ex rel. Pearson v. Probate Court of Ramsey County,* 309 U.S. 270, 274, 60 S.Ct. 523, 525–26, 84 L.Ed. 744 (1940), *aff'g* 205 Minn. 545, 287 N.W. 297 (1939).

*In re Linehan,* 518 N.W.2d 609 (Minn.1994).

If we apply the statute as so construed, the courts will not find it unconstitutionally vague. *Pearson,* 309 U.S. at 274, 60 S.Ct. 523, 526. And the Minnesota Supreme Court has determined that the appellate courts should "reverse cases that misapplied the

statute as narrowed by [*Pearson* ]." *Linehan,* 518 N.W.2d at 610 (citing *In re Blodgett,* 510 N.W.2d 910, 915 (Minn.1994), *pet. for cert. filed,* 62 U.S.L.W. 2530 (U.S. June 9, 1994) (No. 93–9493)).

But the trial court in this case properly applied the statute and should be affirmed. My conclusion is premised on these several considerations:

## I.

In *Pearson,* referring to the third of its list of elements for identifying a psychopathic personality, the Minnesota Supreme Court described the topic in terms of one whose impulses produced the likelihood of attack or other infliction of injury. 205 Minn. at 555, 287 N.W. at 302. In *Blodgett,* the court described this element in terms of the substantial likelihood for a further sexual assault. 510 N.W.2d at 914. This personality is a "violent sexually deviant condition." *Id.* at 915. The psychopathic personality, the court said repeatedly, is a "sexual predator." *Id.* at 915, 917.

Today we attempt to distinguish among dangerous predators, concluding that some can be committed but others cannot. Although appellant has molested 17 or more children over a period of years, by means of seduction and coercion, the evidence does not show that he physically forced others to participate in sexual activity. Appellant's record is one of bribes, threats and other manipulations that coerce or entice young boys into acts of oral sex and other sexual behavior. This evidence, the trial court found, demonstrates a condition that makes it likely appellant will "attack or otherwise inflict injury" on the objects of his uncontrollable desire. (Quoting *Pearson,* 205 Minn. at 555, 287 N.W. at 302.) In my opinion, the evidence warrants this finding, documenting that appellant's condition continuously produces assaults and violence, the dangerous activities of a sexual predator.

The perpetrator of assaults inflicts bodily harm on others. *See* Minn.Stat. § 609.02, subd. 10 (1992) (assault). I find unconvincing the contention that a small child suffers no bodily harm, no assault, no violence, when led methodically into episodes of fondling and

oral sex with an adult. If we engage in this classification of predators, it follows under our criminal code that criminal sexual conduct, including acts constituting criminal sexual conduct in the first degree, are not violent or even assaultive. *See, e.g.,* Minn.Stat. § 609.342, subd. 1(a) (1992) (sexual penetration with a person under 13 years of age).

The supreme court has found appropriate our reversal of the psychopathic personality commitment of a "nonviolent sexual exhibitionist." *Blodgett,* 510 N.W.2d at 915 n. 9 (citing *In re Rodriguez,* 506 N.W.2d 660 (Minn.App.1993), *pet. for rev. denied* (Minn. Nov. 30, 1993)). This court found that the appellant in *Rodriguez* could not be a psychopathic personality because "he did not have physical contact with [his victims], molest, rape, or otherwise sexually assault them." 506 N.W.2d at 663. Appellant has habitually engaged in conduct that constitutes a far different and far more severe danger than the acts described in *Rodriguez.* And appellant has created a danger that contrasts importantly with the fondling, "spanking," and squeezing that was found less than seriously harmful in *In re Rickmyer,* 519 N.W.2d 188 (Minn.1994).

No doubt we can categorize predators. Some use more force than others. Still, we depart from precedent by suggesting that the psychopathic personality statute protects only victims of raw physical force—not the children and vulnerable adults whose lives are severely and permanently marred by sexual behavior like the acts of sexual penetration that are part of appellant's pattern of conduct.

## II.

Appellant patiently planned his sexual conquests and had to work up his courage to deal with his victims. But the trial court reached a proper decision on the second and third elements of the *Pearson* definition, 1) appellant's utter lack of power to control his sexual impulses, and 2) the resulting likelihood that he will repeat his dangerous conduct. *Cf. Linehan,* 518 N.W.2d at 613–14 (vacating commitment where proposed patient has a record of completing alcohol treatment, medical experts cited by the trial court fail to address the *Pearson* criteria, and these experts observe that the proposed patient's personality is stable and fairly controlled). When we evaluate predators who have shown a continuous pattern of noncontrol over a period of many years, and who have not been treated successfully, it is without precedent to distinguish among them by trying to measure the amount of time they consume in preparing to act on their dangerous impulses.

Moreover, because we cannot confine our attention to limited parts of the record, we cannot be preoccupied with Dr. Michael Farnsworth's distinction between plotting behavior and impulsive lack of control. The appellate courts must determine as a question of law whether the record supports, by clear and convincing evidence, the trial court's conclusions that the *Pearson* elements are met. *Linehan,* 518 N.W.2d at 613.

Farnsworth also testified that appellant's behavioral patterns were ingrained, a personality disorder, and that there was a high risk of his further abuse of children. Dr. Satterfield testified that appellant was not in control of his impulses and has a high risk of reoffending. Dr. Fox said that appellant lacked control over his sexual impulses. Addressing the question of whether appellant's lack of control was utter and complete, Fox only expressed bewilderment with an unrealistic construction of the concept, observing that he has never met anyone who offended at every opportunity. We should hold that the record as a whole supports the trial court's conclusions on the elements of noncontrol and risk of further sexual misconduct.

## III.

The judiciary and the community of law scholars will continue to explore numerous questions on the constitutionality of the Psychopathic Personality Statute. The trial court's decision involves neither a substantive due process issue that distinguishes the case from *Blodgett,* nor any question of procedural due process that is not settled by *Pearson,* 309 U.S. at 275–77, 60 S.Ct. at 526–27. And in my opinion, the trial court acted well within the limits dictated by the *Pearson*

holding on vagueness. *Id.* at 274, S.Ct. at 526. But our arbitrary distinction among sexual predators, choosing to apply the statute to some but not to others, entails an unequal protection of the laws beyond the dangers on that score already reviewed in *Pearson,* 309 U.S. at 274–75, 60 S.Ct. at 526, and *Blodgett,* 510 N.W. at 917, 925 (Wahl, J., dissenting).

When concluding that the psychopathic personality statute does not involve denial of equal protection for some persons, the supreme court explained in *Blodgett* that this is because the statute deals specially with "the sexual predator." 510 N.W.2d at 917. According to the evidence, appellant is a sexual predator. The trial court applied the statute appropriately in this case, and by holding otherwise, we hasten the day when the statute will be found unconstitutional.

I respectfully dissent.