**In the Matter of Roger Lee KINDSCHY.**

**No. C1–01–751.**

Court of Appeals of Minnesota.

Oct. 23, 2001.

---

Warren John Maas, Brooklyn Park, for appellant.

Mike Hatch, Attorney General, Angela Mary Helseth, Assistant Attorney General, St. Paul, and David P. Honan, Cottonwood County Attorney, Windom, for respondent.

Amy Klobuchar, Hennepin County Attorney, Peter J. Fransway, Assistant Hennepin County Attorney, Minneapolis, for respondent Minnesota Security Hospital.

Considered and decided by TOUSSAINT, Chief Judge, KLAPHAKE, and HALBROOKS, Judges.

## OPINION

TOUSSAINT, Chief Judge.

The trial court committed Roger Lee Kindschy indeterminately as a sexual psy-

chopathic personality (SPP) and a sexually dangerous person (SDP) pursuant to the Minnesota Civil Commitment and Treatment Act, Minn.Stat. §§ 253B.01.23 (2000). On appeal from the judgment of commitment, Kindschy challenges the constitutionality of two sections of the act and the trial court's finding that Kindschy is "dangerous to others" within the meaning of the act. Because we conclude that the sections of the Minnesota Commitment and Treatment Act Kindschy challenges are constitutional and that the evidence in the record supports the trial court's finding that Kindschy is dangerous to others, we affirm.

## FACTS

Kindschy was born in December 1972. Because of extensive physical and sexual abuse by his stepfather and two of his brothers, Kindschy was removed from the home at age 14 and lived the remainder of his childhood in various foster homes and treatment facilities.

In June 1987, during a camping trip, Kindschy assaulted C.G., an eight-year-old boy who was a resident in Kindschy's foster home. Kindschy asked C.G. to show him his penis and threatened to hit him if he did not comply. Kindschy then rubbed his penis against C.G.'s, ordered him to turn around, and put his penis between C.G.'s buttocks. Although both boys provided similar accounts of the incident and a Cottonwood County social worker found the report substantiated, charges against Kindschy were not filed. Instead, Kindschy was sent to the psychiatric unit at Worthington hospital and then to Unity House, a residential treatment facility in Worthington, Minnesota.

In August 1987, Kindschy was transferred to a foster home. While there, he was suspended from school because of inappropriate sexual behavior with a female student. In late 1988, Kindschy became sexually aggressive with his girlfriend.

In January 1990, Kindschy moved in with the Wiederholt family. During his stay with the Wiederholts, Kindschy masturbated in a public area on at least one occasion and was reprimanded for kissing girls at school and grabbing a girl's breast.

In May 1990, Kindschy was charged with fifth-degree criminal sexual conduct after touching a girl's breast and vaginal area over her clothing. Kindschy was adjudicated delinquent and placed on probation. While on probation, Kindschy was discovered masturbating in front of other children.

In December of 1990, Kindschy was removed from the Wiederholts' home after the Wiederholts heard him making sexual comments and suggestions to a vulnerable foster child. Several years later, Kindschy reported that, while at the Wiederholts, he had forced a ten-year-old boy to have anal sex after telling the boy that he would kill him if he did not comply.

In January 1991, Kindschy was admitted to the Lyon County Group Foster Home. In April, he was removed from the group home and charged with disorderly conduct for threatening to kill his roommate and for being verbally and physically abusive to staff. When removed from the home, Kindschy indicated he "did not give a shit."

At age 19, Kindschy moved into his own apartment in Mountain Lake, Minnesota. In late September or early October 1991, Kindschy sexually assaulted two five-year-old twin boys, C.O.D. and C.L.D, on two different occasions. Kindschy admitted that he touched the boys' penises, forced C.O.D. to jump up and down on his penis to make it hard, and then attempted to have anal intercourse with him. Kindschy stated he could not fully penetrate C.O.D.

because the boy's anal opening was too small. Kindschy was charged with one count of first-degree criminal sexual conduct and four counts of second-degree criminal sexual conduct.

In May 1992, after a Rule 20 examination, Kindschy was found incompetent to stand trial and was placed at the Willmar Regional Treatment Center (WRTC). Throughout his stay at WRTC, Kindschy continued to engage in inappropriate sexual behavior with other patients despite repeated warnings. Kindschy also admitted that he had fondled a 15–year–old girl and inappropriately touched two four-year-old girls, but these offenses were never charged.

Shortly after being placed at WRTC, Kindschy was found competent to stand trial. In January 1993, he pleaded guilty to first-degree criminal sexual conduct. He was sentenced to 43 months at Minnesota Correctional Facility in St. Cloud, but his sentence was stayed, and he was placed on probation for 12½ years. Kindschy's probation included a requirement that he complete sex-offender treatment at Arrowhead House, a residential treatment center in Duluth.

At Arrowhead, Dr. Stephen Olmsted diagnosed Kindschy with pedophilia, possible posttraumatic stress syndrome, borderline-personality disorder with prominent anti-social personality traits, and borderline intellectual functioning. In October 1993, Kindschy was terminated from Arrowhead. His probation was revoked and he was returned to the Minnesota Correctional Facility in St. Cloud.

In January 1994, Kindschy began the sex-offender-treatment program at the Minnesota Correctional Facility in Moose Lake. One day after signing a contract promising not to engage in sexual activities with other inmates, Kindschy was found lying on a bed with another inmate. Four days later, the same inmate complained Kindschy was always following him into the shower. One week later, the inmate was found in the shower holding Kindschy's erect penis. Kindschy was terminated from the program in January 1995 for having sexual contact with a different inmate.

In May 1995, Kindschy finished his prison term at Minnesota Correctional Facility in St. Cloud and was placed on conditional release. Two days later, he violated the conditions of his release and was placed in jail.

In November 1995, Kindschy was admitted to House of Hope, a chemical-dependency halfway house. In February 1996, he was readmitted to Unity House, where he described to therapist Greg Wasberg, 12 offenses against both boys and girls who ranged in age from 5 to 17 years old. The offenses included nonconsensual anal and vaginal sex and fondling, and many of the offenses involved violence. One of these offenses involved a seven-year old boy named Chad, whom Kindschy lured into his home with cookies after meeting him at a restaurant. Kindschy later denied all but three of these offenses.

In May 1996, Kindschy sexually assaulted, D.B., a 35–year–old disabled woman. As D.B. was attempting to unlock her bike, Kindschy walked up behind her and grabbed her breasts and vaginal area. Kindschy admitted to this conduct. He was arrested for the offense but not charged.

In June 1996, the state filed a petition to civilly commit Kindschy as a sexually dangerous person. The petition was later dismissed so that Kindschy could attend Alpha House in Minneapolis. At Alpha House, Kindschy admitted to having sexually assaulted 12 different people, and to having masturbated up to five times to

thoughts of violent, nonconsensual intercourse with both male and female children ages 6 to 14.

In August 1997, the state filed a second petition to commit Kindschy. Once again the petition was dismissed and Kindschy was returned to Alpha House at the recommendation of a court-appointed examiner.

Kindschy self-terminated from Alpha House in June 1999, claiming he was tired of all the rules. The clinic director indicated that Kindschy would have been terminated regardless, because of "his persistent apathetic and defiant attitude and for not abiding by the rules." During his stay at Alpha House, Kindschy admitted to masturbating to deviant fantasies about children in the neighborhood. He also admitted to masturbating to thoughts of assaulting developmentally disabled women. Despite his 33–month stay at Alpha House, Kindschy did not proceed past the first of five phases of the program. The clinic director indicated Kindschy was at high risk to reoffend.

On June 9, 1999, Kindschy returned to Arrowhead House. Dr. Olmsted, who evaluated Kindschy, diagnosed him with pedophilia, mixed-personality disorder, expressive-language disorder, and borderline intellectual functioning. Dr. Olmsted viewed Kindschy as a moderate risk to reoffend, but concluded that it was safe to place Kindschy in the community as long as he attended a therapy group and was accountable for his whereabouts.

As Kindschy was given more freedom at Arrowhead, his behavior worsened. Kindschy missed meetings with Dr. Olmsted and refused to attend treatment. In October 1999, Kindschy was terminated from Arrowhead because of his nonattendance and his negative attitude.

In November 1999, the attorney general filed a petition on behalf of Cottonwood County, seeking to commit Kindschy as an SDP and an SPP. The trial court appointed Roger Sweet, Ph. D., as its first examiner. At Kindschy's request, the trial court later appointed James Gilbertson, Ph.D., as a second examiner.

At trial, Dr. Olmsted testified he terminated Kindschy from the program in 1999 because Kindschy showed no insight into his behavior patterns, had no reoffense-prevention plan, no victim empathy, and did not accept of responsibility for his acts.

Richard Weinberger, a licensed psychologist who worked with Kindschy at Alpha House in 1998 and had extensive experience working with low-intellect patients, testified that Kindschy had a "powerful attachment to his deviant interests and an unwillingness to change." He also stated that Kindschy showed no insight into his behavior and demonstrated no victim empathy.

Both court-appointed examiners testified that Kindschy's sexual offenses created a substantial likelihood of serious physical or emotional harm to others. The examiners based their opinion on the age of the victims and the frequency and type of abuse. Dr. Sweet explained that Kindschy's victims were likely to suffer substantial harm in the form of "poor self image, acute anxiety, lack of trust, loss of control, repressed memories, depression, and possibly post-traumatic stress disorder and distrust of adults and authority." He also stated that victims seven years and older who are sexually abused have an increased likelihood of depression, anxiety, and issues with sexual identity. Dr. Gilbertson added that male child victims who are sexually abused by an adult male often face more difficulties in dealing with the abuse. Both doctors agreed that sexual

abuse as a child could lead to "becoming a perpetrator in later life."

Kindschy testified that he did not need further sex-offender treatment. He also claimed that he was no longer sexually attracted to children because he knew it was wrong.

In June 2000, the trial court committed Kindschy as an SDP and an SPP to the Minnesota Sex Offender Programs at St. Peter and Moose Lake. The trial court credited the state's witnesses and found that Kindschy did not understand his cycle of abuse and did not have an appropriate relapse-prevention plan. It also found that Kindschy's deviant fantasies showed that he was still attracted to children. The trial court determined that Kindschy had engaged in a course of harmful sexual conduct within the meaning of Minn.Stat. § 253B.02, subd. 7a (2000), and in a habitual course of sexual misconduct within the meaning of Minn.Stat. § 253B.02, subd. 18b (2000). The trial court also found that Kindschy had failed to rebut the presumption of harm that arises from the commission of certain criminal-sexual-conduct offenses. Following a review hearing in February 2001, the trial court made Kindschy's commitment indeterminate. This appeal followed.

## ISSUES

1. Does Minn.Stat. § 253B.02, subd. 7a(b) (2000), unconstitutionally shift the burden of proof from the state to a person subject to civil-commitment proceedings as a sexually dangerous person by establishing a rebuttable presumption that certain criminal-sexual-conduct crimes create a substantial likelihood of serious physical or emotional harm?

2. Does Minn.Stat. § 253B.185, subd. 1 (2000), unconstitutionally place on a person subject to civil commitment as a sexually dangerous person or a sexual psychopathic personality the burden of proving that a treatment alternative less restrictive than commitment exists?

3. Is the trial court's finding that Kindschy's pattern of sexual misconduct makes him "dangerous to others" within the meaning of Minn.Stat. § 253B.02, subd. 18b (2000), supported by clear and convincing evidence?

## ANALYSIS

### I.

Kindschy first argues that by establishing a rebuttable presumption that certain criminal-sexual-conduct offenses create a substantial likelihood of serious physical or emotional harm to others, Minn.Stat. § 253B.02, subd. 7a(b) (2000), unconstitutionally shifts the burden of proof from the state to a person subject to civil-commitment proceedings. Specifically, Kindschy claims that because the rebuttable presumption places the risk of non persuasion on the person subject to commitment, it unconstitutionally shifts the burden of proof.

Whether a statute is constitutional is a question of law subject to de novo review. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). When considering the constitutionality of a statute, we are mindful that laws come to this court with a presumption of validity and may be declared unconstitutional only with great caution and if absolutely necessary. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989). A person challenging the constitutionality of a statute has the burden of establishing beyond a reasonable doubt that the statute violates a claimed right. *In re Conservatorship of Foster*, 547 N.W.2d 81, 85 (Minn. 1996). Kindschy has not met his burden of establishing that Minn.Stat. § 253B.02, subd. 7a(b), violates a claimed right.

■ Minnesota law defines a sexually dangerous person as a person who (1) has engaged in a course of "harmful sexual conduct" within the meaning of Minn.Stat. § 253B.02, subd. 7a; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) is likely to engage in "harmful sexual conduct" as defined in subdivision 7a. *Id.,* subd. 18c(a). Subdivision 7a defines "harmful sexual conduct" as "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another." *Id.,* subd. 7a. The statute establishes a rebuttable presumption that conduct that constitutes criminal sexual conduct in the first through fourth degrees "creates a substantial likelihood that a victim will suffer serious physical or emotional harm." *Id.,* subd. 7a(b). Kindschy claims that this presumption unconstitutionally shifts the burden of proof from the state to the respondent in a civil-commitment proceeding.

■ We note first that the Minnesota Rules of Evidence provide that in all civil actions a presumption "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof." Minn. R. Evid. 301. A party does not have to rebut a presumption until the opposing party has established the facts that give rise to the presumption. *Id.,* 1997 comm. cmt. Thus, Kindschy's argument that the statute shifts the burden of proof is incorrect; rather, the statute allows the state to establish the element of likelihood of harm to others through proof that the respondent committed criminal sexual conduct in the first to fourth degrees. At all times the burden of proof remains with the state.

The state in this case proved by clear and convincing evidence the facts giving rise to the presumption that Kindschy's conduct creates a substantial likelihood of serious physical or emotional harm to others—namely, that Kindschy engaged in criminal sexual conduct in the first to fourth degrees. The state thus satisfied its burden of proof, and the burden shifted to Kindschy to rebut the presumption of harm. The trial court found that Kindschy failed to rebut the presumption. We can see no unconstitutional shifting of the burden of proof here, and Kindschy has submitted no authority to persuade us otherwise. On the contrary, the existing authority supports our conclusion that the statute does not unconstitutionally shift the burden of proof and fully comports with due process otherwise.

Kindschy's argument in this case is similar to one rejected by the Supreme Court in *Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). In *Jones,* the Supreme Court considered the constitutionality of the District of Columbia's civil-commitment law adopted by Congress. Under that law, a defendant acquitted of an offense by reason of insanity is automatically committed to a mental hospital until the defendant proves by a preponderance of the evidence that he or she is no longer mentally ill or dangerous. *Id.* at 356–58, 103 S.Ct. at 3045–46. The defendant in *Jones* had been acquitted of misdemeanor theft by reason of insanity and was thereafter confined in a mental hospital under the District's commitment law. *Id.* at 359, 103 S.Ct. at 3047. On appeal, he contended that the law unconstitutionally failed to require the District to prove present mental illness and dangerousness, as it would otherwise be required to do absent acquittal by reason of insanity. *Id.* at 362, 103 S.Ct. at 3048.

The Supreme Court rejected this argument, holding that Congress could constitutionally infer dangerousness from the

criminal act itself for purposes of civil commitment, even if the criminal act was a non-violent act involving property. *Id.* at 364–65, 103 S.Ct. at 3049–50. The Court noted that the commission of a criminal act could reasonably be found to be "at least as persuasive as any predictions about dangerousness that might be made in a civil-commitment proceeding." *Id.* at 364, 103 S.Ct. at 3049–50. Additionally, while recognizing the uncertainty inherent in psychiatric diagnoses and the tentativeness of professional judgments about dangerousness, the court concluded that the lesson to be learned "is not that government may not act in the face of this uncertainty, but rather that courts should pay particular deference to reasonable legislative judgments." *Id.* at 364 n. 13, 103 S.Ct. at 3050 n. 13.

Here, the Minnesota Legislature made a judgment that a person who has engaged in conduct that constitutes criminal sexual conduct in the first to fourth degrees may be presumed, subject to rebuttal, to be substantially likely to inflict serious physical or emotional harm on others. As the Supreme Court said of Congress's judgment in *Jones*, the Minnesota Legislature's judgment here is at least as persuasive as any predictions about the likelihood of physical or emotional harm that might be made in a civil-commitment proceeding on the basis of expert testimony submitted by the state. It is also eminently reasonable and consistent with due process. *See Lynch v. Overholser,* 369 U.S. 705, 714, 82 S.Ct. 1063, 1069, 8 L.Ed.2d 211 (1962) (noting that finding that accused has committed criminal act is "strong evidence that his continued liberty could imperil 'the preservation of public peace' "); *cf. Jackson v. Indiana,* 406 U.S. 715, 727–30, 92 S.Ct. 1845, 1852–54, 32 L.Ed.2d 435 (1972) (holding that person found incompetent to stand trial could not be committed indefinitely on the basis of an incompetency finding absent affirmative proof that accused committed criminal acts or was otherwise dangerous).

We thus conclude that the rebuttable presumption in Minn.Stat. § 253B.02, subd. 7a(b), does not unconstitutionally shift the burden of proof and otherwise comports with due process.

## II.

■ Kindschy next argues that Minn. Stat. § 253B.185, subd. 1 (2000), unconstitutionally places the burden on a person subject to civil commitment to prove that a treatment option less restrictive than commitment is available. The statute provides that in proceedings for commitment of sexually dangerous persons or persons with a sexual psychopathic personality, "the court shall commit the patient to a secure treatment facility unless the patient establishes by clear and convincing evidence that a less restrictive treatment program is available." *Id.* Contrary to Kindschy's argument, and unlike statutes governing commitment procedures for persons with mental illness, mental retardation, or chemical dependency, Minn.Stat. § 253.185, subd. 1, does not require that commitments be made to the least-restrictive treatment program. *In re Senty–Haugen,* 583 N.W.2d 266, 269 (Minn.1998) (holding that person subject to commitment as sexually dangerous person or sexual psychopathic personality had no statutory right to receive treatment from least-restrictive alternative program). Under the current statute, patients have the *opportunity* to prove that a less-restrictive treatment program is available, but they do not have the *right* to be assigned to it. Minn.Stat. § 253B.185, subd. 1. Kindschy's argument that the statute unconstitutionally shifts the burden of proof to him is, therefore, without merit.

## III.

Kindschy last claims the state failed to present clear and convincing evidence that his acts of sexual misconduct involved sufficient violence to justify a finding that he is "dangerous to other persons" within the meaning of Minn.Stat. § 253B.02, subd. 18b (2000), the SPP commitment statute. We disagree.

In reviewing a mental-health commitment, this court accepts the trial court's factual findings unless clearly erroneous. *In re Joelson*, 385 N.W.2d 810, 811 (Minn.1986). Whether the trial court's factual findings justify commitment, on the other hand, is a question of law subject to de novo review. *In re Linehan*, 518 N.W.2d 609, 613 (Minn.1994).

A person may be committed as a sexual psychopathic personality on clear and convincing proof that he (1) has engaged in a habitual course of misconduct in sexual matters; (2) has an utter lack of power to control his or her sexual impulses; and (3) is, therefore, dangerous to others. *See* Minn.Stat. §§ 253B.02, subd. 18b, 253B.12, subd. 4 (2000). A person is "dangerous to others" and subject to commitment as a sexual psychopathic personality when the person's pattern of sexual misconduct (1) creates a substantial likelihood of serious physical or emotional harm to others, and (2) is likely to recur because of an utter lack of power to control sexual impulses. *In re Preston*, 629 N.W.2d 104, 112–13 (Minn.App.2001) (holding that behavior involving coercion, physical force, and oral and vaginal sex with children as young as four years old supported finding that sex offender had utter lack of power to control his sexual impulses and justified SPP commitment); *cf. In re Rickmyer*, 519 N.W.2d 188, 190 (Minn.1994) (holding SPP commitment not justified when inappropriate sexual conduct, although repellent, included only spanking of young boys,

fondling, and indecent exposure); *In re Robb*, 622 N.W.2d 564 (Minn.App.2001) (reversing SPP commitment of band teacher where sexual assaults included masturbation and fellatio but involved no physical injuries, and mental harm caused by assaults was no greater than mental harm typically associated with sexual assault), *review denied* (Minn. Apr. 17, 2001).

In determining if a person is "dangerous to others" courts must consider (1) the nature and frequency of the sexual assaults; (2) the degree of violence involved; (3) the relationship between the offender and the victims; (4) the offender's attitude and mood; (5) the offender's medical and family history; (6) the results of psychological and psychiatric testing and evaluation; and (7) other factors that bear on the predatory sex impulse and the lack of power to control it. *In re Blodgett*, 510 N.W.2d 910, 915 (Minn.1994).

The trial court considered the relevant factors and properly determined that Kindschy is "dangerous to others." Unlike the assaults in *Rickmyer* and *Robb*, Kindschy's sexual assaults involved much more than spanking, fondling, masturbation, and indecent exposure. They involved repeated oral and anal sex with children as young as five years old and were accompanied by threats of violence. As in *Preston*, the character and nature of Kindschy's assaults alone justify a finding that Kindschy is substantially likely to cause serious physical and emotional harm and is, therefore, dangerous to others within the meaning of Minn.Stat. § 253B.02, subd. 18b.

## DECISION

Minn.Stat. §§ 253B.02, subd. 7a(b), .185, subd. 1 (2000), do not unconstitutionally shift the burden of proof from the state to a person subject to civil-commitment pro-

ceedings as a sexually dangerous person or a sexual psychopathic personality. The evidence amply supports the trial court's finding that Kindschy is "dangerous to other persons" within the meaning of Minn. Stat. § 253B.02, subd. 18b (2000).

**Affirmed.**